IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| RODERICK DAVID TAYLOR | § | |
| v. | § | CIVIL ACTION NO. 2:07cv324 |
| SHERIFF McCOOL, ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Roderick Taylor, a former inmate of the Harrison County Jail, proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights during his confinement in the jail. As defendants, Taylor names Harrison County Sheriff W.T. McCool and a jailer named Jimmy Kirkland.

In his original complaint, Taylor says that Sheriff McCool allowed pork to be served to Muslim inmates such as himself and has not trained employees properly about the procedures for handling food or utensils. He says that the Sheriff "has allowed hate crimes to take place without response" and has refused to answer grievances or to fire employees who break the law. He also says that he was told that if he did not eat pork, he would not eat at all. Taylor says that Kirkland threatened him with bodily harm, called him an "Islamic bitch," and threatened to spray him with roach spray.

The defendants have been ordered to answer and have filed a motion for summary judgment. In this motion, the defendants state that the Harrison County Jail houses an average of 140 inmates and that inmates may request pork-free meals during book-in. Usually, the jail houses none who have done so; during 2008, fewer than five inmates requested pork-free meals.

The defendants state that there is no space in the jail for a separate kitchen and that it would be prohibitively expensive to equip and staff two kitchens. In addition, the defendants say, the creation of a separate kitchen to prepare special meals for a few inmates could lead to the impression that some inmates were receiving special favors, resulting in low inmate morale and unrest.

However, the defendants say pork-free meals are provided to those inmates who request them. A person named Susie Campbell, who holds a food purveyor's certification from the City of Marshall, has been hired to prepare meals for inmates.

According to Campbell's affidavit, attached to the motion for summary judgment, Campbell knew that Taylor had requested pork-free meals. She states that she usually sends out the correct number of pork-free trays, but that sometimes a pork-free tray is given to the wrong inmate, and then a regular tray is given to a prisoner who had requested a pork-free tray. If this happens, she will prepare another pork-free tray, but if the inmate has already eaten the food on the regular tray, she will not prepare another one. In addition, Campbell says it is possible that she may have forgotten a pork-free tray, and if this happens, she will prepare one if the inmate has not already eaten the food on a regular tray.

The defendants state that Taylor was confined in the Harrison County Jail from March 1 to June 1, 2007. Some of the inmates in his tank had been getting cigarettes into the tank, which Taylor did not like, and so he began trying to interfere. The defendants state that Taylor made a shank from a toothbrush by sharpening it on a piece of metal and then made a lot of commotion so that jailers would come by while he was sharpening it. An inmate named Darren Johnson gave an affidavit saying that he believed that Taylor did this in order to get to change tanks.

On April 16, 2007, according to the affidavit of Jimmy Kirkland, he was passing out mops and mop buckets. When Kirkland passed U Tank, where Taylor was housed, Taylor said that Kirkland should get him out of there or there would be trouble. Kirkland saw Taylor sharpening the toothbrush on a piece of metal and called for assistance.

Kirkland says that Sgt. Headrick showed up, and they went into the tank. He asked where the shank was, and Taylor replied that he did not have a shank. Kirkland said that he had seen Taylor sharpening it, and Taylor said that it was in the trash can. When Kirkland asked him to get it, he says that Taylor replied "bitch, you get it." Kirkland insisted that Taylor retrieve the shank, which Taylor eventually did. Kirkland removed Taylor from the tank and placed him in a separation

cell, but denies calling Taylor an "Islamic bitch," threatening him with bodily harm, or threatening to spray him with roach spray.

The defendants argue that Taylor has not satisfied the physical injury requirement of the Prison Litigation Reform Act and that they are entitled to qualified immunity. Taylor did not file a response to the motion *per se*; however, he did file a motion for summary judgment of his own, which also included responses to the defendants' motion.[1]

In his motion for summary judgment, Taylor says that he was intentionally given pork in his vegetables. He says that the "pork free" trays would have meat substitutes, but that the vegetables would have "strains of pork," making them not pork free. He says that the kitchen supervisor, Susie Campbell, told him that "if you are so religious you would not be in jail" and that "she would not give him a thing."

Taylor says that even though the jail kitchen is designed to serve all inmates the same food, this kitchen consists of nothing more than a commercial gas stove and a commercial oven, and so all the jail would have to do to provide proper pork-free meals would be to purchase different pots and pans and oven inserts. In the whole year of 2008, only five inmates requested pork-free meals, and so Taylor says that "any cookware set" could be used to prepare meals for five inmates, or cheese or peanut butter given as a substitute for pork.

Taylor says that during his time in U Tank, he saw inmates making "crack pipes" out of telephone wires, he saw pills being smuggled in, and he saw TV cords cut to make "stingers" (i.e. electrical water heaters). He says that this caused him stress because of the cell searches and body searches. When the door was open, he says he told Kirkland about what was going on, saying that certain inmates were being very hostile and that he, Taylor, was in danger and needed to be moved.

---

[1] The defendants correctly point out that the Court set a deadline for filing motions for summary judgment in an order dated October 23, 2008, and that Taylor's motion for summary judgment was filed well outside of this deadline.

Kirkland told him that "he would look into it right away," and so Taylor says that he went back in the cell and waited for 30 minutes.

After this time had passed, Taylor says that he heard Kirkland in the hall again and told him that he, Taylor, was going to make a shank. He had a new toothbrush in his hand, so he acted as though he was sharpening it. Kirkland told Taylor that he had not had time to look into the situation, so Taylor went to the "panic button" and told a jailer named Wyatt that he was going to make a shank and cut someone if the jail staff did not get him out of the cell. Wyatt reported this to Headrick, and so Headrick, Kirkland, and a jailer named Slade came rushing into the cell. Taylor says that Kirkland asked him where was the shank, and Taylor said that there was no shank. Kirkland replied "where is the shank, you Islamic bitch?" Slade told Kirkland to step back and asked Taylor to give him whatever he had, so Taylor went to the trash can and gave Slade the toothbrush, which had not been altered.

Taylor says that Headrick took him into the hallway, where Taylor explained why he had done what he did, saying that he had to be moved for his own safety. Headrick said that he did not have anywhere to put Taylor and that the only way he could get him out of the cell was to put him in segregation, and so Taylor would have to sign a weapons report. Headrick said that he would not take away any privileges, and so Taylor signed the report.

However, he says, he was placed in a separation cell with no running water and an unpainted bunk, which he says exposed him to unsanitary conditions and to rust. He says that the food which he ate under those conditions made him sick to his stomach and that he was "exposed to acid which gave off fumes," apparently from unstopping the toilet. When he asked for medical care, he was told that there was no doctor or nurse on duty.

On April 23, 2007, Taylor says his mail was thrown on the floor of Q Cell by Kirkland, who did not open the slot or the window to call anyone's name. He called Wyatt on the intercom, and Wyatt said "it's probably yours, pick it up." Taylor says that they must have discussed throwing his mail on the floor because how would Wyatt otherwise have known that it was in fact his mail which

4

was thrown on the floor. Later that day, he says, Kirkland accused him of stealing a pork-free tray and told him that "you ate pork in the world."

Taylor says that the incident report is falsified because it says that Taylor was sharpening a piece of metal, when in fact it was a toothbrush. Also, he says, the report only says that Headrick and Kirkland came in the cell, when in fact Officer Slade was there also. He also complains that the Sheriff would not respond to his grievances and asks for summary judgment because he was denied the right to practice his religion. For relief in his original complaint, Taylor asks for "termination of position" and for "monetary gain for religious persecution."

## Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Securities and Exchange Commission v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994); *General Electric Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the nonmovant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. *ContiCommodity Services, Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential

element of the opposing party's claim is without factual support. *First American Bank & Trust of Louisiana v. Texas Life Ins. Co.*, 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Caldas & Sons v. Willingham*, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the nonmovant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. *Caldas*, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *see also Gordon v. Watson*, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. *Recile*, 10 F.3d at 1097 n.15. A nonmovant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. *Hulsey*, 929 F.2d at 170, *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**Application of the Legal Standards to the Facts**

The two claims raised in Taylor's original complaint concern the denial of pork-free meals and the verbal abuse by Jimmy Kirkland. He says that he received pork on pork-free trays "on and off up to 30 days or better," indicating that sometimes he received a pork-free tray and sometimes he did not. He says that Susie Campbell also works for the Marshall Independent School District and so does not prepare the meals in the jail herself, but instead has inmates do it; Taylor also says that he has seen an inmate worker intentionally put pork into the pork-free trays.

6

In *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994), the plaintiff said that he received only three non-pork meals during a 25-day lockdown, causing him to have to live on peanut butter biscuits. The Fifth Circuit reversed the dismissal of this claim.

By contrast, in *Randall v. McLeod*, 68 F.3d 470 (5th Cir., Sept. 15, 1995) (not selected for publication in the Federal Reporter), the prisoner complained that he was not provided with pork-free meals on two occasions. The district court dismissed this claim as frivolous, saying that the two isolated instances in which he was served pork did not amount to a substantial burden on his exercise of religious faith and were not a constitutional violation. The Fifth Circuit affirmed this dismissal, saying that the plaintiff had failed to show that he was denied adequate food or that his religious freedom was burdened.

Significantly, the Court stated that its reasoning paralleled that of the Sixth Circuit in *Barnes v. Mann*, 12 F.3d 211 (6th Cir. 1993). In that case, the plaintiff claimed that the defendant prison officials failed to provide adequate substitutes when pork, pork-items, or pork derivatives were served. The Sixth Circuit held that the plaintiff was "asserting a legal interest which did not exist because he is not constitutionally entitled to a pork-free diet; rather, the defendants were required to prepare a diet sufficient to keep prisoners in good health, or, in the case of Muslims, a diet providing them with adequate nourishment without the consumption of pork. The Sixth Circuit went on to say that to the extent that the plaintiff is asserting that he is malnourished, he has failed to properly plead such a claim.

Taylor's claim is distinguishable from that in *Eason*, where the inmate received pork at virtually every meal and so was forced to subsist only on peanut butter biscuits. He does not dispute the defendants' assertion that if an inmate was supposed to receive a pork-free tray but did not, one would be prepared if he had not eaten the regular meal. As the Fifth Circuit indicated in *Randall,* there is no constitutional right to a pork-free tray *per se*, but only to adequate nourishment without the provision of pork. Taylor has not pleaded, much less shown, that he was deprived of adequate

7

nourishment, nor that he was unable to get a pork-free tray if he asked for one without eating the regular meal with which he was provided.

Instead, Taylor suggests that the jail should make special accommodations for inmates wanting pork-free trays, including purchasing special cookware to be used separately. The Fifth Circuit has held that prisons are not required to accommodate special dietary requests with particularized requirements regarding the content and preparation of food. *Kahey v. Jones*, 836 F.2d 48, 950-51 (5th Cir. 1988); *Udey v. Kastner*, 805 F.2d 1218, 1219 (5th Cir. 1986). Taylor's request that the prison purchase special cookware to be used separately is akin to Kahey's assertion that her Muslim faith prevented her not only from eating pork, but from eating any food cooked or served in or on utensils that have come into contact with pork or any pork by-product; the Fifth Circuit held that the prison need not accommodate Kahey's request to this extent.

The undisputed summary judgment evidence shows that pork-free trays were prepared for inmates who requested one. While sometimes errors may have been made in the distribution of these trays, another tray would be prepared if the inmate, in keeping with his faith, declined to eat the regular meal which had been accidentally delivered to him.

The sole defendant named in connection with this claim is Sheriff McCool. Taylor does not allege that the Sheriff personally prepared or delivered the meals. Instead, he sues the Sheriff based on a theory of supervisory liability.

The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct, and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

As noted above, Taylor does not assert that Sheriff McCool was personally involved in a constitutional deprivation. He does not point to wrongful conduct by the Sheriff which was causally connected to a constitutional deprivation. Nor does Taylor show that Sheriff McCool implemented a constitutionally deficient policy which was the moving force behind a constitutional deprivation; on the contrary, the summary judgment evidence shows that the Harrison County Jail had a policy of attempting to accommodate inmates wanting pork-free trays, including allowing them to request such a diet while being booked into the jail, the preparation of pork-free diet trays, and the opportunity to request such a tray if a regular tray were accidentally delivered. The fact that Taylor may have been served a regular tray on occasion does not itself show that a constitutional violation took place, much less that Sheriff McCool was himself responsible for such a violation. The jail has no constitutional obligation to purchase separate cookware for the use of preparing pork-free trays, as Taylor suggests. His claim against Sheriff McCool is without merit.

Taylor also complains of verbal abuse at the hands of a jailer named Jimmy Kirkland, saying that Kirkland threatened to use physical force on him, called him an "Islamic bitch," and threatened to spray him with roach spray. The Fifth Circuit has held that "mere threatening language and gestures" of a custodial officer do not, even if true, amount to constitutional violations. *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). The use of words, no matter how violent, does not comprise a section 1983 violation. *Johnson v. Glick,* 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). To the extent that Taylor complains about Kirkland's verbal abuse, his claim is without merit.

In his motion for summary judgment, Taylor raises new allegations, including claims that he was placed in a segregation cell by Sgt. Headrick after telling the officers that he was going to make a shank; he also complains about the conditions in this segregation cell, as well as about mail being thrown on the floor, falsification of jail reports, and the failure to answer grievances.

The Fifth Circuit has held that as a general rule, new claims cannot be raised in motions for summary judgment. *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004);

9

see also *Jones v. E.R. Snell Contractor, Inc.*, 333 F.Supp.2nd 1334, 1349 (N.D.Ga. 2004); *Lukos v. I.R.S.*, 815 F.2d 78 (6th Cir. 1987) (unpublished) (available on WESTLAW at 2987 WL 36354). Hence, these new issues are not properly before the Court.

Even if they were before the Court, however, it is plain that these issues have no merit. In the first place, Taylor wholly fails to show that either of the named defendants, Sheriff McCool and Jimmy Kirkland, had any connection with his placement in the segregation cell or the conditions in this cell. The Fifth Circuit has held that in order to successfully plead a cause of action in civil rights cases, a plaintiff must enunciate a set of facts that illustrate the defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). The fact that Kirkland threw his mail onto the floor of his cell does not set out a constitutional claim; although Taylor offers the conclusory assertion that this was "retaliation," the throwing of mail on the floor is clearly a *de minimis* act and thus will not support a retaliation claim. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.), *cert. denied*, 549 U.S. 1038 (2006) (retaliation claim must allege more than a *de minimis* act).

Taylor's claim that the incident report was "falsified" because it says that he was sharpening a piece of metal, when in fact he says that he was pretending to sharpen a toothbrush on a piece of metal, is also *de minimis*. Furthermore, Taylor has not shown that this alleged falsification implicated any constitutionally protected liberty interests. *See Johnson v. Rodriguez*, 110 F.3d 299, 309 (5th Cir. 1997). Nor has he shown that either of the named defendants were responsible for this alleged falsification. Taylor's claim on this point is without merit.

Finally, Taylor complains that Sheriff McCool would not respond to his grievances. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.*, slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v.*

*Lensing, et al.*, slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Taylor has failed to show the violation of a constitutionally protected right and so his claim on this point is without merit. *See also Mann v. Adams*, 855 F.2d 639 (9th Cir.), *cert. denied* 109 S.Ct. 242 (1988) (inmates have no legitimate claim of entitlement to a grievance procedure, and thus no protected liberty interest exists); *Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991) (same).

## Qualified Immunity

The defendants invoke the defense of qualified immunity in their motion for summary judgment. The Supreme Court has stated that the doctrine of qualified immunity protects government officials from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 808 (1982). Because the driving force behind creation of the doctrine was a desire to ensure that insubstantial claims against government officials be resolved prior to discovery, the Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Pearson*, 129 S.Ct. at 815.

The qualified immunity analysis contains two prongs - a determination whether the facts alleged make out a violation of a constitutional right, and a determination whether the right at issue was clearly established at the time of the alleged misconduct. These prongs are not sequential, but may be considered in either order. *Pearson*, 129 S.Ct. at 817.

In *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court reiterated the standard for a constitutional right to be clearly established, as follows:

> Its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ....but it is to say that in the light of pre-existing law, the unlawfulness must be apparent.'

*Hope*, 536 U.S. at 739, 122 S.Ct. at 2515, *citing Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

11

The Supreme Court went on to clarify that the factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity. Rather, qualified immunity can be overcome as long as prior decisions give reasonable warning that the conduct then at issue violated constitutional rights. The Court concluded that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 740-41, 122 S.Ct. at 2515-16.

The Fifth Circuit has held that before engaging in the inquiry as to whether prison officials unreasonably violated clearly established law, the district court must first consider whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of federal law in the first place. *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). In this case, as explained above, Taylor has not shown that the conduct by the defendants amounted to a violation of federal law. He has not shown any basis for imputing *respondeat superior* liability to Sheriff McCool, and his claims against Kirkland - even those raised for the first time in Taylor's motion for summary judgment - do not show the violations of any clearly established constitutional rights of which a reasonable jailer would have been aware. While Kirkland's threats of violence, abusive name-calling, and throwing mail on the floor, as expressed by Taylor, were unwarranted and improper, Taylor has not shown that these actions amounted to violations of the Constitution or laws of the United States. Because a reasonable jailer would not believe that Kirkland's or McCool's actions violated a clearly established constitutional right of the plaintiff, the defendants are entitled to the defense of qualified immunity in this case. *See also Brawner v. City of Richardson, Texas*, 855 F.2d 187 (5th Cir. 1988); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

**Conclusion**

The Court has carefully examined the record in this cause, including the plaintiff's pleadings, the defendants' motion for summary judgment, the competent summary judgment evidence, and all other pleadings, documents, and records in this case. Upon such review, the Court has determined that there are no disputed issues of material fact and that the defendants Sheriff McCool and Officer

12

Jimmy Kirkland are entitled to summary judgment on the claims against them. The Court has further concluded that these defendants are entitled to the defense of qualified immunity. For the reasons expressed herein, the defendants' motion for summary judgment (Docket No. 35) is granted.

SIGNED this 28th day of September, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE